UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:95-cr-00482-KJM-AC-2 |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Brian Vidrine, | |
| Defendant. | |

The sentencing judge in this case imposed a custodial sentence on defendant Brian Vidrine of 468 months in prison, based on his conviction on six counts. Mr. Vidrine has served approximately 346 months. He seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). He alleges he was subjected to disproportionate "stacking" of the sentences for his convictions, which creates a wide disparity between his sentence and the sentence someone convicted of the same charges would receive today. The government opposes and Mr. Vidrine has replied. Based on recent changes in law, and the totality of the record, the court addresses this disparity by **granting** the motion.

/////

/////

/////

/////

### I. BACKGROUND

Mr. Vidrine is currently serving his 468-month federal sentence in the Ohio Department of Corrections.[1] *See* Mot. at 4, ECF No. 298; Opp'n at 3, ECF No. 302. Mr. Vidrine was charged with "escape, in violation of 18 U.S.C. § 751(a) (count one), armed bank robbery, in violation of 18 U.S.C. § 2113(a)(d) (counts two, four and six), attempted escape, in violation of 18 U.S.C. § 751(a) (count three), and use of firearm, in violation of 18 U.S.C. § 924(c)(1) (counts five and seven). *See* Opp'n at 3; Reply at 1, ECF No. 303. Mr. Vidrine pled "guilty to count one's escape and was convicted after trial of the three bank robbery counts and two use of firearm counts." Reply at 2. The court sentenced him to the 468 months in prison, as well as 60 months of supervised release and imposed $56,821 in restitution and a $300 special assessment. *See* Opp'n at 3. His 468-month sentence entailed "60-month[s] for count one's escape count, 168-month terms for the bank robbery convictions in counts two, four and six, each concurrent to each other and concurrent with count one's term; a consecutive 60-month sentence for count five's 924(c) conviction, and a consecutive 240-month sentence for count seven's 924(c) conviction." Mot. at 4.

Mr. Vidrine has been incarcerated since October 13, 1995. *See* Reply at 7. He has served 346 months, roughly 74 percent of his sentence, not counting good conduct credits. *See* Mot. at 4. Moreover, he "has not lost any good conduct time," which he argues allows him to "be credited with another 1,548 days or more than 51 months [(4 years).]" Reply at 7. Counting good conduct credits, Mr. Vidrine has completed 397 months of his sentence or approximately 85 percent of his sentence. *See id.* Mr. Vidrine also has engaged in rehabilitation efforts, taking "college courses [over] the last few years [once] these were offered to him," Reply at 9, and engaging in "a variety of jobs, including several years doing food service," Mot. at 14. Attached to Mr. Vidrine's reply is a copy of his transcript, a Spanish preparation certificate, and "an

---

[1] The Government explains "[a] State Placement such as Vidrine's is pursuant to Program Statement (PS) 5100.08, CN-1, Inmate Security Designation and Custody Classification, - CH 7, Page 13–14. "18. STATE PLACEMENT. Inmates who have exhausted available resources within the Bureau of Prisons, should be referred for placement in an appropriate non-federal facility under contract with the Bureau." Opp'n at 3 & n.1.

2

1  English Composition class essay Mr. Vidrine wrote [on political partisanship.]" Reply at 9 & n.5;
2  *see* Vidrine Educ. Rs., Reply Ex. 2, ECF No. 303-1.

3  Prior to filing this motion, Mr. Vidrine "requested a recommendation for a reduction in
4  sentence from the [Bureau of Prisons ("BOP")] by sending a request to Director of the [BOP]
5  because his local warden has no discretion to grant such a motion." *See* Mot. at 5 (explaining
6  "Mr. Vidrine made his request directly with the Director level in Washington D.C., because he is
7  not housed in a BOP facility"); BOP Req., ECF No. 298-1.  Mr. Vidrine, through his appointed
8  counsel, now moves for compassionate release. *See generally* Mot.  The government opposes,
9  Opp'n, and Mr. Vidrine has replied, Reply.

10 **II.     LEGAL STANDARD**

11 The district court that imposed a custodial sentence can modify the term of imprisonment
12 under 18 U.S.C. § 3582(c)(1)(A).  A defendant must first exhaust administrative remedies.  *Id.*  If
13 a defendant has exhausted administrative remedies, the analysis is twofold.  First, the court must
14 find "extraordinary and compelling reasons warrant" the requested reduction.  *Id.*  Second, the
15 court must consider the same factors that were applicable at the original sentencing, enumerated
16 in 18 U.S.C. § 3553(a), to the extent they remain applicable.  *See id.*

17 Section 3582 further requires a reduction to be "consistent with applicable policy
18 statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).  The Sentencing
19 Commission has issued a policy statement addressing what qualifies as "extraordinary and
20 compelling reasons" to release a defendant from BOP custody.  *See* U.S.S.G. § 1B1.13 (last
21 amended Nov. 1, 2023).  The moving defendant bears the burden of "establish[ing] his eligibility
22 for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

23 The relevant policy statement outlines six categories of circumstances that may constitute
24 "extraordinary and compelling reasons" for a sentence reduction, including in relevant part:
25 "[o]ther [r]easons" where the defendant "presents any other circumstance or combination of
26 circumstances that, when considered by themselves or together with any of the [other

extraordinary and compelling reasons], are similar in gravity to [the other reasons],'" U.S.S.G. § 1B1.13(b)(5).  Another relevant provision in the policy statement provides,

> Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* at § 1B1.13(b)(6).

### III.	ANALYSIS

The government agrees Mr. Vidrine has satisfied the exhaustion requirement of § 3582(c). Opp'n at 4. The court thus considers whether Mr. Vidrine's request is supported by extraordinary and compelling reasons and whether the applicable sentencing factors of § 3553(a) weigh in favor of a reduction in sentence.

#### A.	"Extraordinary and Compelling" Reasons

Mr. Vidrine argues the "'stacking' of his § 924(c) convictions' sentences and the effect this had on [his] total term of imprisonment and the enormous disparity between his sentence and the sentence that would be imposed on a similar defendant today" amount to "extraordinary and compelling" circumstances that warrant his compassionate release. *See* Mot. at 1. Mr. Vidrine argues if he was sentenced today, his two § 924(c) convictions on counts 5 and 7 "would not trigger the enhanced 20 year term of imprisonment he received," because no one was physically harmed and "[t]here was no violation of subsection 924(c) that occurred after a prior conviction had become final." *Id.* at 2 (citing 18 U.S.C. § 924(c)(1)(C)(i)).

Relatively recently, Congress amended § 924(c) in passing the First Step Act to clarify that the twenty-year enhancement described above applied only when the first conviction was "final" at the time the defendant committed the second offense. *See* First Step Act, Pub. L. 115-391, § 403(a), 132 Stat. 5222 (2018). The First Step Act describes this amendment as a

4

1  "[c]larification of section 924(c)," but it is not retroactive. *See id.* § 403(b) ("This section, and
2  the amendments made by this section, shall apply to any offense that was committed before the
3  date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of
4  enactment").

5  Although Congress did not make the amendments to § 924(c) retroactive, courts in this
6  circuit have held that if a defendant would have received a drastically lower sentence under the
7  amended statute, that may be sufficient to constitute an "extraordinary and compelling" reason,
8  particularly in light of a favorable assessment of the § 3553 factors. *See, e.g.*, *United States v.*
9  *Blackbird*, No. 05-174, 2024 WL 3552446, at *4 (D. Mont. July 26, 2024); *United States v.*
10 *Galindo*, No. 23-1069, 2024 WL 3200283 (9th Cir. June 27, 2024) (affirming district court
11 decision finding stacking and consideration of the § 3553 factors constitutes a "extraordinary and
12 compelling" for release). This court itself has previously held "changes to 924(c) can be one of
13 any number of 'extraordinary and compelling reasons' to grant a motion for compassionate
14 release, if a defendant's individual characteristics support that finding." *See United States v.*
15 *Smith*, 538 F. Supp. 3d 990, 1000 (E.D. Cal. 2021).

16 Mr. Vidrine argues that "[t]he First Step Act's changes to 924(c) are called 'clarifying;'
17 thus demonstrating that Congress never intended the mandatorily enhanced sentence be applied to
18 someone in Mr. Vidrine's factual situation." *See* Mot. at 2; First Step Act § 403(a), Pub. L. 115-
19 391, 132 Stat. 5222 (2018). The court agrees the 20-year enhancement he received would not be
20 given to someone convicted of the same crimes today under the First Step Act. Instead, "[h]ad
21 count seven's sentence been imposed as Congress intended, it would have dropped to a
22 consecutive 60-month term" and he would have received a total sentence "between 255 and 288
23 months," which would be more than satisfied by the 346 months he has already served. Mot. at 4,
24 7.

25 U.S.S.G. § 1B1.13(b)(6) explicitly provides that a court can consider an unusually long
26 sentence where defendant has already served at least ten years as an "extraordinary and
27 compelling reason." However, section 1B1.13(b)(6) includes qualifying language that limits
28 relief under that section to exclude "an amendment to the Guidelines Manual that has not been

5

1  made retroactive." Thus, this provision does not seem to squarely apply to Mr. Vidrine's case,
2  where the amendment was not made retroactive.

3  Even if subsection (b)(6) regarding unusually long sentences does not clearly apply, Mr.
4  Vidrine has shown his circumstances are similarly compelling. *See* U.S.S.G. § 1B1.13(b)(5)
5  (describing catch-all provision, whereby an extraordinary and compelling reason exists if a
6  "defendant presents any other circumstance or combination that, when considered by themselves
7  or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity
8  to those described in paragraphs (1) through (4)"). As explained above, changes to § 924(c) can
9  provide a reason to grant a motion for compassionate release, particularly if a defendant's
10 individual characteristics support that finding. Here, Mr. Vidrine was 30 when he participated in
11 the armed bank robberies of which he was convicted, whereas he is now 59 years old. *See* Reply
12 at 9; Opp'n at 2–3. He has also served the vast majority of a sentence that would very likely have
13 been much shorter if he had been sentenced under the terms of subsection 924(c) as clarified by
14 Congress. He has shown a notable commitment to rehabilitation as evidenced by his prison files
15 documenting his completion of extensive coursework, has not had a negative disciplinary history
16 while incarcerated and has pursued job training. *See* Mot. at 14; Reply at 9. The government
17 does not argue he has earned infractions or exhibited concerning behavior while incarcerated, *see*
18 *generally* Opp'n, instead, over the last almost 30 years of his incarceration, he has earned good
19 conduct credits and has not lost any good conduct time, *see* Reply at 7. In opposition, the
20 government primarily cites out of circuit decisions from the Seventh Circuit, despite the fact that
21 the Ninth Circuit has explicitly declined to join the Seventh Circuit and has instead held it
22 "conclude[s] that district courts may consider non-retroactive changes in sentencing law, in
23 combination with other factors particular to the individual defendant, when analyzing
24 extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." *United States v. Chen*,
25 48 F.4th 1092, 1098 (9th Cir. 2022).

26 Having carefully considered the totality of the record here, the court finds the original
27 stacking of Mr. Vidrine's sentences, followed by Congress's clarification and Mr. Vidrine's post-
28 sentencing rehabilitation, support a finding of extraordinary and compelling circumstances under

6

§ 1B1.13(b)(5). *See, e.g.*, *Smith*, 538 F. Supp. 3d at 1001 (finding defendant's young age at time of his crimes, his service of overwhelming majority of his sentence, which would be much shorter today, and his rehabilitation while incarcerated support finding "extraordinary and compelling reasons"); *United States v. Hurtado*, No. 08-00102, 2023 WL 2746816, at *2 (D. Nev. Mar. 30, 2023) (finding defendant's disproportionate sentence constituted "extraordinary and compelling" reason for sentence reduction under "catch-all" provision in § 1B1.13(b)(5)); *United States v. King*, No. 06-00658, 2023 WL 7194866, at *4 (N.D. Cal. Nov. 1, 2023) ("The Court finds that [the defendant's] rehabilitative efforts and young age at the time of sentencing combined with an extraordinary long sentence presents an extraordinary and compelling circumstance that is 'similar in gravity' to the age of the defendant exception and thus warrants a reduced sentence," (alteration omitted) (citing U.S.S.G. §§ 1B1.13(b)(2), 1B1.13(b)(5)); *cf. United States v. Ramos*, No. 01-00098, 2024 WL 2060498, at *2–3 (D. Idaho May 8, 2024) (finding sentencing disparities could support compassionate release after Section 403 became law but defendant in that case had not been subjected to enhanced sentence—he only received two five-year sentences—and thus he was not eligible for early release).

## B. Sentencing Guidelines

In considering a motion for compassionate release, the court also looks to the relevant factors in 18 U.S.C. § 3553(a). The Sentencing Guidelines instruct specifically that "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196–97 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). The sentencing factors include, among others, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public"; and "(D) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3533(a).

"In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm." *United States v. Zaragoza*, No. 08-0083, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008). Here, these factors weigh in favor of release.

First, the court considers the "nature and circumstances of the offense." *See* 18 U.S.C. § 3553(a)(1). Mr. Vidrine's crimes of armed robbery, use of a firearm and escape are unquestionably serious and violent crimes. However, Mr. Vidrine's crimes occurred almost 30 years ago, and he has since demonstrated a sustained commitment to rehabilitation and good conduct, and there is no indication he has incurred infractions while incarcerated. *See* Mot. at 7–9. This factor weighs only minimally against release, considering Mr. Vidrine's good conduct in the last roughly 30 years.

Second, the court considers the length of Mr. Vidrine's sentence in assessing the appropriateness of release, though this factor is not dispositive. As mentioned above, Mr. Vidrine has completed over 74 percent of his lengthy sentence, not counting good conduct credits. *See* Mot. at 4. This court and others have granted compassionate release to defendants serving significantly less percentages of time overall. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1087 (E.D. Cal. 2020) (collecting cases of courts' granting compassionate release to defendants who served less than 30 percent of sentence imposed). Because Mr. Vidrine has already served the majority of his sentence—fulfilling more than the sentence he would receive for his convictions today—and compassionate release could resolve potential disparities posed by the potential for a shorter sentence under the First Step Act, this factor weighs in favor of release.

Third, the court considers the need to "protect the public from further crimes" and "any pertinent policy statement," including considering any dangers early release might pose to the community. *See* 18 U.S.C. §§ 3553(a)(2)(C), (a)(5). Though the government broadly argues "a significant sentence is necessary here to protect the public from any future crimes committed by th[e] defendant," the government does not specify why Mr. Vidrine poses a particular danger to the public after 30 years of incarceration and rehabilitation. *See* Opp'n at 9. Again, as noted, there is no indication Mr. Vidrine has engaged in concerning conduct while incarcerated. *See*

*generally* Opp'n; Reply.  Instead, Mr. Vidrine shows he has participated in educational and job training and received good conduct credit without having any of that credit taken away.  *See* Reply at 7–9; Mot. at 14.  Moreover, BOP's assessment indicates he is at a low risk for recidivism, *see* Reply at 9 (explaining greater education levels and age of Mr. Vidrine reduce his recidivism rates).[2]  This factor weighs in favor of release.

Fourth, in its discretion, the court assesses Mr. Vidrine's potential for danger to the community.  The Social Work Team of the Federal Defender's Office has put together a release plan for Mr. Vidrine, "outlining resources that [it argues] will sufficiently address his needs as he reenters the community." Mot. at 13–17.  The plan identifies trusted resources to provide Mr. Vidrine with mentorship, assistance in accessing physical training, vocational training, transportation, food benefits, COVID vaccines, "housing, healthcare, employment, education and/or faith community involvement." *Id*.  Mr. Vidrine "will also continue to have the support of the Social Work Team of the Federal Defender's Office," which "will provide ongoing reentry support and appropriate social services coordination." *Id.* at 17.  Moreover, Mr. Vidrine will be placed on supervised release for five years as contemplated by the original sentence.  *See* Opp'n at 3.  The government makes no specific argument explaining why Mr. Vidrine at this point is a danger to the community.  *See generally* Opp'n.  The court finds this factor weighs in favor of release.

In sum, the court finds the sentencing factors weigh in favor of Mr. Vidrine's release.

**IV.    CONCLUSION**

The court **grants Mr. Vidrine's motion for compassionate release**.  The court modifies Mr. Vidrine's previously imposed sentence of 468 months to time served, with supervised release to follow for 60 months.

This order is stayed for up to seven days to allow Mr. Vidrine to make appropriate travel arrangements and to ensure his safe release.  Mr. Vidrine shall be released as soon as appropriate

---

[2] U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* 24–25 (Sept. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf (last accessed Aug. 12, 2024).

1  travel arrangements are made, and it is safe for him to travel.  If more than seven days are needed
2  to make appropriate travel arrangements and ensure his safe release, then the parties shall
3  immediately notify the court and show cause why the stay should be extended.
4      This order resolves ECF No. 298.
5      IT IS SO ORDERED.
6  DATED:  August 22, 2024.

CHIEF UNITED STATES DISTRICT JUDGE